### In re EVERLETH.

(District Court, D. Vermont. April 19, 1904.)

1. BANKRUPTCY—EXEMPTIONS—WEARING APPAREL.

Neither a watch and chain, nor a sword and belt, constituting a part of Masonic regalia, are exempt to a bankrupt as wearing apparel under the Vermont statute; nor are the watch and chain exempt as a time-piece, constituting a part of the tools of his trade as a barber, where among such tools there was also a clock; but a hat, although also a part of his regalia, is exempt.

In Bankruptcy.

Anthony F. Schwenk, for bankrupt.

Clarke C. Fitts, for trustee.

WHEELER, District Judge. The bankrupt appears to have been a barber, and to have had the tools and implements proper and necessary for a barber's shop, including a clock; and he also had a watch and chain, worth $20, and Masonic regalia, consisting of a hat, belt, and sword, of the value of $35, which he claims to be exempt. The clock has been turned over by the bankrupt to the trustee. The questions remaining are as to the watch and chain and the regalia. The watch and chain are claimed to be exempt as constituting a timepiece, but they do not seem to be as necessary for that purpose as the clock; and a watch and watch chain have usually been understood to be attachable, and not exempt, under the laws of this state. They are not in any sense any part of the barber's outfit, nor of the wearing apparel, which is exempt by name in the state statutes.

Such a question as to articles similar to the Masonic regalia was before the Supreme Court of the state in Sawyer v. Sawyer, 28 Vt. 249. The articles there were a sword, sword belt, and epaulets of the intestate, worn by him when in uniform as a purser in the United States Navy; and a watch, ornamental key, and chain, a finger ring, and a breastpin worn by him usually, in his lifetime. It was held by a majority of the court that the sword and belt, watch and chain, and finger ring were not a part of the wearing apparel, and did not pass as such to the widow, but remained a part of the estate, and that the epaulets, with the coat on which they were, should go as wearing apparel to the widow. That question as to the meaning of the words "wearing apparel," on decreeing distribution between the widow, the heirs, and creditors, was very similar to the one here as to the meaning of the same words in setting out property between the bankrupt and creditors.

That decision has never, so far as has been pointed out or noticed, been overruled in any respect. As applicable here, it disposes of all questions except as to the hat. This hat is understood to be such a one as, when worn, would answer all the purposes of a hat, and would be, of itself, wearing apparel. It may be used only for the purposes of the order to which the bankrupt belonged; but, when so used, it would be for a covering or protection of the head from

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 659.

the weather, as hats ordinarily are that constitute a part of the wearing apparel, and it might be so used at any time. It is like the coat, on which the epaulets were worn, in Sawyer v. Sawyer, about which no question appears to have been made but that it was wearing apparel.

The decision of the referee is therefore modified as to the hat, and, as so modified, affirmed. The denial of the right to the watch as a timepiece so varies the circumstances as to the clock delivered up that the trustee may properly enough now set out the clock, if the bankrupt so desires, with the hat, as exempt.

Decision of referee modified as to the hat, and then affirmed, with leave to allow the clock to be set out as exempt, with the hat.